IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-00643-CV-RK |
| ) | |
| S&A PIZZA, INC., JEFFREY RUMANER, ) | |
| PIPELINE PRODUCTIONS, INC., ) | |
| MICHAEL EDMONDSON, BRETT ) | |
| MOSIMAN, MIDWEST PRODUCTION ) | |
| SERVICES, LLC, PLT, LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the court is Crossclaim Defendants S&A Pizza and Jeffrey Rumaner's motion to dismiss the Crossclaim of Defendants Pipeline Productions, Inc., Michael Edmondson, Brett Mosiman, PLT, LLC, and Midwest Production Services, LLC. (Doc. 45.) The motion is fully briefed. (Docs. 48, 49.) For the reasons set forth below, the motion to dismiss is **GRANTED in part** and **DENIED in part** as follows: (1) the motion to dismiss is granted as to the Crossclaim seeking contribution, and (2) the motion is otherwise denied.

**I. OVERVIEW**

On April 21, 2008, Michael Edmondson, Pipeline Productions, Inc., and S&A Pizza entered the "Operating Agreement of Crossroads Live, LLC" ("Operating Agreement"). (Doc. 42 at ¶ 14, Doc. 25-1 at 1.) The Operating Agreement provided for the formation of a limited liability company called Crossroads Live, LLC, ("Company") for the purpose of producing and operating music events in Kansas City. (Doc. 42 at ¶ 15.) The ownership interests of the initial members were as follows: Edmondson 14.3%, Pipeline Productions 34.7%, and S&A Pizza 51%. (*Id.*)

On October 16, 2021, Pipeline Productions, Inc; Michael Edmondson; Brett Mosiman; PLT, LLC; and Midwest Production Services, LLC's (collectively, the "Pipeline Defendants") filed an amended complaint (the "Underlying Lawsuit") against S&A Pizza and Mr. Rumaner ("Crossroads Defendants"), among others in *Pipeline Productions, Inc. et al v. S&A Pizza, Inc.*, Case No. 4:20-cv-00130-RK. (Doc. 42 at ¶ 12.) The Underlying Lawsuit alleges, in relevant part, that Crossroads Defendants conspired to steal the Company's business, reputation, and assets from

its other members (Pipeline Productions and Edmonson) to prop up his own failing business interests. (*Id.* at ¶ 13.)

On April 18, 2022, Nautilus Insurance Company ("Nautilus") filed an amended complaint in the instant lawsuit against Pipeline Defendants and Crossroads Defendants seeking recission of and restitution for an insurance policy (the "Policy") Nautilus previously issued to S&A Pizza. (*See generally id.*) Specifically, Nautilus seeks relief based on alleged material misrepresentations made on August 6, 2019, by S&A Pizza in its Commercial Insurance Application ("Application"). (*Id.* at ¶¶ 50-58.) Alternatively, the Amended Complaint asks the Court to declare that the Policy does not provide coverage for the claims in the Underlying Lawsuit, and Nautilus has no duty to defend or indemnify Crossroads Defendants in the Underlying Lawsuit under the Policy. (*Id.* at ¶¶ 59-111.) Finally, also in the alternative, the Amended Complaint seeks a declaration that Nautilus owes no insurance coverage for any punitive damages awarded in the Underlying Lawsuit. (*Id.* at ¶¶ 112-117.)

In the Application, S&A Pizza utilized Class code 90758 to identify S&A Pizza's business as "mobile concessions". (*Id*. at ¶ 44.) The Application further states that S&A Pizza does not own and/or rent any parking facilities, that no social events are sponsored by S&A Pizza, and that S&A Pizza is not actively participating in any joint ventures. (*Id.* at ¶¶ 45-46.) S&A Pizza also indicated in the Application that it is not a subsidiary of another entity and that it does not have any subsidiaries. (*Id*. at ¶ 43.) In its Amended Complaint, Nautilus alleges that the aforementioned descriptions were material misrepresentations, and that had Nautilus been aware of the exact nature of S&A Pizza's business, it would not have issued the Policy and/or would have specifically excluded coverage for such business operations. (*Id.* at ¶¶ 47-48.)

Pipeline Defendants filed their Answer, Affirmative Defenses, and Crossclaim to the Amended Complaint on April 29, 2022. (Doc. 44.) Pipeline Defendants asserted a single crossclaim against Crossroads Defendants for contribution and indemnity ("Crossclaim"). (Doc. 44 at Crossclaim ¶¶ 7-10.) In its Crossclaim, Pipeline Defendants assert that the alleged misrepresentations outlined in the Amended Complaint constitute "misconduct," as defined in the Operating Agreement between Pipeline Defendants and Crossroads Defendants, and entitles Pipeline Defendants to indemnity and contribution of all liability and attorney's fees deriving from the Amended Complaint. (*Id.*)

Crossroads Defendants move to dismiss the Crossclaim under Rule 12 of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for contribution and indemnity.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject matter jurisdiction. The court must be certain it has subject matter jurisdiction before it proceeds. *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the Court "may look outside the pleadings to affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). The party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus*, 4 F.3d at 593 n.1. Finally, "[i]t is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Here, though the parties do not specify the standard under which this motion to dismiss for lack of subject matter jurisdiction is to be analyzed, the motion briefing refers only to materials that are necessarily embraced by the pleadings and exhibits attached to them. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). Accordingly, the Court examines its subject matter jurisdiction under the standard used for a facial attack.

### B. Rule 12(b)(6) standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failing to state a claim for relief. In order to avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plausibility standard requires a showing of more than just a mere possibility that the relief sought is in fact obtainable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a 12(b)(6) motion to dismiss, the Court is obligated to accept the plaintiff's specific factual allegations as true but it is not obligated to accept the plaintiff's legal conclusions. *Brown v. Medtronic, Inc.,* 628 F.3d 451, 459 (8th Cir. 2010). The Court shall not dismiss a complaint simply because it doubts the plaintiff's ability to prove all necessary factual allegations. *Twombly*, 550 U.S. at 556. Consequently, a well-pleaded complaint will defeat a motion to dismiss even though recovery seems very unlikely. *Id*.

### III. Analysis

#### A. The Court has supplemental subject matter jurisdiction over Pipeline Defendants' Crossclaim

Crossroads Defendants argue that the Court lacks subject matter jurisdiction over Pipeline Defendants' crossclaim. Specifically, Crossroads Defendants argue that the Crossclaim does not arise from the same transaction or occurrence as the subject matter of the Amended Complaint.

It is undisputed that the Court has jurisdiction over the Amended Complaint because the parties involved are of diverse citizenship and the amount in controversy exceeds $75,000. Rule 13(g) of the Federal Rules of Civil Procedure states:

> A pleading may state as a crossclaim any claim by one party against a compart if the claim arises out of the same transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim related to any property that is the subject matter of the original action.

Jurisdiction over crossclaims is governed by 28 U.S.C. § 1367, which provides that federal courts have supplemental jurisdiction over all claims that are so related to the original action that they form part of the same case or controversy. Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *ABF Freight Sys., Inc. v. Int'l Brotherhood of Teamsters,* 645 F.3d 954, 963 (8th Cir. 2011) "A plaintiff's claims derive from a common nucleus of operative fact if the claims are such that he would ordinarily be expected to try them all

in one judicial proceeding." *One Point Sols., LLC v. Borchert,* 486 F.3d 342, 350 (8th Cir. 2007) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).

The Eighth Circuit has yet to identify a specific standard courts should use to determine whether a crossclaim arises out of the same transaction or occurrence as the subject matter of the original claim. However, to determine whether a counterclaim arise out of the same transaction or occurrence as the initial complaint the Eighth Circuit has articulated four tests. *Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 264 (8th Cir. 1979). Specifically, the Eighth Circuit has articulated four specific factors that indicate whether a counterclaim sufficiently arises out of the same transaction or occurrence: (1) Does the counterclaim raise issues of law and fact that are largely the same with the initial claim?; (2) Would res judicata bar a subsequent suit on the counterclaim?; (3) Will substantially the same evidence support or refute the initial claim and counterclaim?; and (4) is there a logical relationship between the initial claim and the counterclaim? *Id.* If the answer is "yes" to any of these inquiries, the claim and counterclaim arise out of the same transaction or occurrence and supplemental jurisdiction is proper. *Pecore v. Jennie-O Turkey Store, Inc.*, 990 F. Supp. 2d 984, 988 (D. Minn. 2014). Because there is no Eighth-Circuit-prescribed test specific to supplementary jurisdiction over crossclaims, courts in this circuit have employed the *Cochrane* factors in such analysis. *E.g. W. World Ins. Co. v. David Halphin*, No. 12-1397-CV-DGK, 2013 WL 3665251, at *1-3 (W.D. Mo. July 12, 2013).

Crossroads Defendants argue that the Crossclaim does not bear a significant enough connection to the subject matter of the Amended Complaint to give rise to supplemental subject matter jurisdiction. Their primary arguments are that the Crossclaim and the Amended Complaint do not share overlapping legal and factual issues; that adjudicating the Amended Complaint and the Crossclaim in the same case would cause unnecessary expenses; and that the Amended Complaint focuses on the Policy and the Application, while the Crossclaim focuses on the Operating Agreement.

First, the Court finds that the Amended Complaint and the Crossclaim involve overlapping factual issues – specifically, the allegations that S&A Pizza made material misrepresentations in the Application. Pipeline Defendants do not allege that any of the allegations in the Underlying Lawsuit entitle them to indemnity or contribution in the instant case. Rather, Pipeline Defendants' claim that S&A Pizza's alleged misrepresentation in the Application, if proven true, would

constitute "misconduct" under the terms of the Operating Agreement, and thus they would be entitled to indemnification as to their attorneys' fees regarding the instant lawsuit.

The Amended Complaint and the Crossclaim also have a logical relationship that requires them to be litigated together. The "logical relationship" test "requires a determination of whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one case." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n,* 952 F. Supp. 1399, 1410 (D. Neb. 1997). The Eighth Circuit has found that claims and counterclaims are logically related if they are triggered by the same event. *Tullos v. Parks,* 915 F.2d 1192, 1196 (8th Cir.1990) (in litigation stemming from a contest for control of a bank holding company and its sole subsidiary bank, the initial suit brought claims based on federal securities laws, then counterclaims were brought for violations of the federal securities laws, as well as claims implicating only state law, and the Eighth Circuit found the counterclaims implicating only state law to be compulsory counterclaims ancillary to the plaintiffs' federal claims properly giving rise to ancillary jurisdiction).

Here, both the Amended Complaint and the Crossclaim arise from the same "triggering event" allegation: that S&A Pizza made a material misrepresentation in the Application. Furthermore, in Pipeline Defendants' Crossclaim, Pipeline Defendants simply reallege the allegations set forth in the Amended Complaint and assert that the same facts constitute "misconduct" under the terms of the Operating Agreement. Like in *Tullos*, the claims of the Amended Complaint and Crossclaim were all triggered, to some extent, by the same event: S&A Pizza filling out the Application. 915 F.2d at 1196. In sum, then, the essential facts of the Amended Complaint and the Crossclaim are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one case.

In so ruling, the Court finds Crossroads Defendants' reliance on *Western World Insurance Co. v. David Halpin* unavailing. In *Western World*, the Court found that it lacked subject matter jurisdiction over a crossclaim that did not arise out of the same transaction or occurrence that was the subject matter of the original action. *Id.* at *2. The initial complaint in *Western World* sought a declaration from the court that Western World was not obligated under an insurance policy to defend or indemnify the defendant for damages stemming from a fire. *Id.* Specifically, Western World argued that an exclusion in the insurance policy for roofing operations that involved torching, hot tar, wand, or similar heat processes applied to exclude coverage for the fire that

6

Case 4:21-cv-00643-RK   Document 54   Filed 07/29/22   Page 6 of 11

occurred. *Id*. at *3-4. One of the defendants subsequently filed a crossclaim of negligence against the roof builder. *Id*. at *1. The crossclaim alleged that the roof builder was negligent and that negligence caused the fire. *Id.* at *2. The Court found the crossclaim for negligence had no relation to the initial complaint seeking declaratory relief because it would not need to determine whether the roof builder was negligent in its work to decide the declaratory judgment action, which would be based on whether under the insurance policy obligated the plaintiff to defend or indemnify the roof builder under the policy's exception to coverage in certain circumstances, including where hot tar is used in its roofing work. *Id.*

Here, in contrast, the Amended Complaint and the Crossclaim both involve factual and legal questions deriving from the Application. Unlike in *Western World*, the Crossclaim here is concerned with the precise factual situation alleged in the initial complaint: that S&A Pizza made a material misrepresentation in the Application. The only allegation that Pipeline Defendants assert beyond what was alleged in the initial complaint is that the allegations set forth in the Amended Complaint constitute "misconduct" under the Operating Agreement.

The Court finds the instant case more analogous to *Penberthy v. Courtyard Management*, No. 16-00412-CV-W-BP, 2017 WL 5068514 (W.D. Mo. July 24, 2017). In *Penberthy,* the Court exercised supplemental subject matter jurisdiction over a crossclaim for indemnity stemming from an initial complaint seeking damages for negligence. *Id.* at *1. The initial complaint in *Penberthy* alleged that the plaintiff fell and was injured because defendant hotel and its subcontractors negligently failed to inspect and maintain a handicap bar. *Id.* The hotel filed crossclaims for indemnity and contribution based on allegations that the acts of negligence of one of the contractors who built the handicap bar caused the plaintiff's alleged injuries. *Id.* The hotel brought this crossclaim based on an agreement it had with the contractor stating, "[the contractor] shall indemnify, defend and hold harmless [the hotel] . . . against all claims, damages, losses and expenses . . . arising out of or resulting from performance of the work." *Id*. As in *Penberthy*, Pipeline Defendants are only bringing their Crossclaim to assert their rights as provided in the Operating Agreement.

The Court finds the Crossclaim is logically related to, and arises out of, the same transaction and occurrence that is the subject matter of the Amended Complaint. Therefore, the

*Cochrane* test has been satisfied, and the Court has supplemental subject matter jurisdiction over the Crossclaim.[1]

### B. The Crossclaim fails to state a claim for contribution

In response to the Amended Complaint, Pipeline Defendants filed a crossclaim seeking contribution to the extent they may be held liable for the claims in the Amended Complaint. In their motion to dismiss, Crossroads Defendants argue the Crossclaim fails to state a claim for contribution because Crossroads Defendants and Pipeline Defendants are not jointly liable for Nautilus' claims in the Amended Complaint.

Contribution and indemnity are uniquely different concepts. *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727, 729 n. 3 (Mo. 1982). Contribution divides the loss between tortfeasors by commanding each tortfeasor to pay his own proportionate share. *Id.* "The two primary requisites of the right to contribution are (1) the parting seeking contribution and the party from whom it is being sought share a common liability or burden, and (2) the party seeking contribution has discharged more than his fair share of that common liability or burden." *SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP*, 128 S.W.3d 534, 539 (Mo. Ct. App. 2003). "Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Guillard v. Niagara Mach. & Tool Works*, 488 F.2d 20, 22 (8th Cir. 1973).

Crossroads Defendants argue that Pipeline Defendants will not incur a common liability for which they could seek contribution because Nautilus only seeks a declaration that the Policy does not obligate Nautilus to defend Crossroads Defendants in the Underlying Lawsuit. In response, Pipeline Defendants admit that the probability of requiring contribution in the Amended Complaint is low but included a contribution claim out of an abundance of caution.

The Court finds that Pipeline Defendants have failed to state a claim for contribution. Pipeline Defendants have failed to plead more than a mere possibility that contribution might be obtainable. In its Amended Complaint, Nautilus does not seek monetary relief, nor does it allege any misconduct by Pipeline Defendants. It is therefore apparent that no common liability exists.

---

[1] In so finding, the court also rejects Pipeline Defendants' conclusory argument, offered without support or citation to authority, that adjudicating both the Amended Complaint and the Crossclaim in the same suit would cause unnecessary expense.

Because Pipeline Defendants have failed to adequately state a claim for contribution, Crossroads Defendants' motion to dismiss the contribution claim is granted.

### C. The Crossclaim states a claim for contractual indemnity.

Finally, the Crossroads Defendants argue the Crossclaim fails to state a claim for contractual indemnity because the alleged misrepresentations in the Application as described in the Amended Complaint do not constitute "misconduct" under the terms of the Operating Agreement.

Under Section 6.5(A) of the Operating Agreement, indemnity is available if a party engages in "misconduct", which the Operating Agreement defines as:

> [A]ny action taken or failure to act on behalf of the Company [if] such action or omission was outside the scope of the Business, an intentional breach of this Agreement, constituted bad faith or wanton or willful misconduct, embezzlement or conversion of Company property, or misrepresentation of the financial condition of the Company.

(Doc. 25-1 at 12.) Under Section 6.5(C) the "misconduct" must have caused the liability or costs for which the indemnitee seeks indemnification:

> Each Member and Successor hereby agrees to indemnify and hold the Company and each other Indemnified Person wholly and completely harmless from any liability, cost, or damage that any such Indemnified Person may incur (including reasonable legal and other expenses incurred in defending against such liability, cost, or damage) resulting from the Misconduct of such Member or Successor.

(*Id.*)

Crossroads Defendants' argument is based on their argument that S&A Pizza did not make the alleged misrepresentations on behalf of the Company. Instead, Crossroads Defendants claim that S&A Pizza filed the Application strictly in the interest of S&A Pizza, which it argues is "outside the scope of the Business," and results in Crossroads Defendants not being obligated to indemnify Pipeline Defendants under the terms of the Operating Agreement. Alternatively, Crossroads Defendants assert that if the Court determines that Crossroads Defendants engaged in misconduct, that such Misconduct did not cause the liability, damages, or cost for which Pipeline Defendants seek indemnification. Instead, it is Crossroads Defendants' contention that the fees for which Pipeline Defendants seek indemnification stem solely from Nautilus's decision to seek declaratory judgment.

Indemnity shifts responsibility from one person to another. *SSM Health Care St. Louis*, 128 S.W.3d at 539. Missouri generally follows the American Rule regarding attorneys' fees,

requiring each party to pay its own attorneys' fees unless a statute or a contract specifically permit recovery of attorneys' fees. *Monarch Fire Prot. Dist. of St. Louis Cty. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011).

Crossroads Defendants' argument that S&A Pizza filed the Application strictly in its own interest and therefore they are not obligated to indemnify Pipeline Defendants under the terms of the Operating Agreement is unpersuasive. At the time when S&A Pizza filed the Application, S&A Pizza owned 51% of the Company. (Doc. 44 at Crossclaim ¶ 5; Doc. 42 at ¶¶ 45, 52.) These allegations are sufficient to support a plausible theory that S&A Pizza pursued insurance coverage because it was in the best interest of the Company, such that it would not fall "outside the scope of the Business" under the Operating Agreement's definition of misconduct. In other words, because it is alleged that S&A Pizza had considerable stake in the Company when it filed the Application, it is plausible that S&A Pizza did so on behalf of the Company and within the scope of the Business.

Crossroads Defendants' alternative argument that the attorneys' fees for which Pipeline Defendants seek indemnification stem solely from Nautilus's decision to seek declaratory judgment is also without merit. Nautilus filed its Amended Complaint based on alleged misrepresentations made by S&A Pizza in the Application, not because of any conduct of Pipeline Defendants. Section 6.5(C) of the Operating Agreement requires each Member to the agreement to indemnify the other Members for any attorneys' fees that are a result of the Member's Misconduct. Since the Amended Complaint derives from the alleged misrepresentations made by S&A Pizza, the language in Section 6.5(C) applies in this precise scenario. Therefore, it is the alleged misrepresentations made by S&A Pizza that, if proven true, would constitute misconduct and entitle Pipeline Defendants to indemnification, not the decision by Nautilus to seek declaratory judgment.

The Court finds that Pipeline Defendants have plead a plausible claim for indemnification under the terms of the Operating Agreement. Accordingly, Crossroads Defendants' motion to dismiss the crossclaim for indemnification for failure to state a claim is denied.

**Conclusion**

For the reasons above, Crossroads Defendants' motion to dismiss (Doc. 45) is **GRANTED** as to Pipeline Defendants' Crossclaim for contribution and **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED: July 29, 2022